IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID LEE MOORE, JR.,
        Plaintiff,

vs.                                          Case No.: 3:19cv39/MCR/EMT

CORRECTIONAL OFFICER NUNN, et al.,
        Defendants.
_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint (ECF No. 1). Presently before the court is Plaintiff's Second Amended Complaint (ECF No. 11).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by Plaintiff, it is the opinion of the undersigned that all of Plaintiff's claims against all Defendants should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.      BACKGROUND

Plaintiff names six Defendants in this case: Chaplain Ult, the chaplain at Santa Rosa Correctional Institution, and five members of the security staff at Santa Rosa C.I., Officer Nunn, Officer Ibanez, Lieutenant Johnson, "Unknown Sergeant," and "Unknown Captain" (ECF No. 11 at 1–3).[1]  Plaintiff states he is bringing individual capacity claims against all Defendants, and official capacity claims against Officer Nunn and Chaplain Ult (*id.* at 15, 17).  Plaintiff asserts an Eighth Amendment claim against Officer Nunn for his conducting an "unnecessary" strip search (*id.* at 17). Plaintiff asserts Eighth Amendment claims of excessive force against Officers Nunn and Ibanez, and he also appears to assert that the use of force was retaliatory, in violation of the First Amendment (*id.* at 15, 17).  Plaintiff seeks to hold the supervisory Defendants, Lieutenant Johnson, "Unknown Sergeant," and "Unknown Captain," liable for the alleged use of excessive force by their subordinates, Nunn and Ibanez (*id.* at 15).  Plaintiff claims that all Defendants, except Officer Ibanez, violated his First Amendment right to freely exercise his religion (*id.* at 15, 17).  He claims that Officer Nunn and Chaplain Ult violated his right under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (*id.*).

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers of the original documents.

Plaintiff seeks nominal, compensatory, and punitive damages (ECF No. 11 at 16). He also seeks a declaratory judgment stating that Defendants' past conduct violated his constitutional rights and RLUIPA (*id.* at 16, 17).

## II.    STATUTORY SCREENING STANDARD

Because Plaintiff is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines that Plaintiff's allegations fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to Plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). To survive statutory screening under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotation marks and citation omitted).

The court must consider the operative pleading (in this case, the Second Amended Complaint) in its entirety. The court will also consider other sources

which courts ordinarily examine when ruling on a 12(b)(6) motion, in particular, documents attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

III.    PLAINTIFF'S FACTUAL ALLEGATIONS

The court includes factual allegations from Plaintiff's Second Amended Complaint (*see* ECF No. 11 at 6–14) and any clarifying facts included in his initial Complaint (ECF No. 1) and First Amended Complaint (ECF No. 6). Plaintiff prefaces his allegations concerning Defendant Officer Nunn's allegedly "unnecessary" search by describing the search and restraint procedures employed by officers prior to removing him, and other inmates in his custody classification, from a cell to attend a group therapy session (ECF No. 11 at 6). Plaintiff alleges he is placed in full restraints, meaning, he is handcuffed behind his back and a waist belt is applied to secure the handcuffs behind his back (*id.*). Plaintiff alleges group therapy is limited to 12 inmates, but sometimes more than 12 inmates wish to attend (*id.*). Plaintiff alleges in such circumstances, officers conduct strip searches to discourage inmates from attending therapy (*id.*). Plaintiff alleges officers allow

inmates to wear boxer shorts even during strip searches, and they never ask inmates to strip naked (*id.*).

Plaintiff alleges on October 2, 2017, Defendant Officer Nunn came to his cell to escort him to group therapy (ECF No. 11 at 6). Plaintiff alleges Officer Nunn opened the flap of his cell door, and Plaintiff gave him his clothes, except his boxer shorts (*id.*). Plaintiff alleges Nunn directed him to remove his boxer shorts, and he complied (*id.*). Plaintiff alleges Nunn directed him to step to the back of the cell, lift his genitalia, then face away, bend at the waist, and spread his buttocks (*id.*). Plaintiff alleges he told Officer Nunn, "Ya'll haven't been asking us to do any of that" (*id.*). Plaintiff alleges Nunn repeated his directives (*id.* at 6–7). Plaintiff alleges he complied with Nunn's orders, and when he turned to face Nunn, Nunn told him to do it again, because he did not do it correctly (*id.* at 7). Plaintiff alleges Officer Nunn had "a mischievous grin on his face" (*id.*). Plaintiff alleges he called Officer Nunn a "fag" and told Nunn to "get his gay ass away from my cell" (*id.*).

Plaintiff alleges the next day, on October 3, Officer Nunn "defiled" two of his kosher meals (lunch and dinner), by "opening everything up and dumping the contents into the brown paper bag" and then spitting into the bag (ECF No. 11 at 7).[2]

---

[2] In Plaintiff's initial Complaint, he clarified that he was a participant in the Certified Food Option ("CFO") of the FDOC's Religious Diet Program ("RDP") (*see* ECF No. 1 at 8). According to FDOC policy, the RDP provides three options for religious inmates: (1) a no-meat alternative, (2) a vegan alternative, and (3) a religious diet alternative, which "accommodates religious diet

Plaintiff alleges Nunn "defiled" his kosher dinner in the same manner on October 6, and "defiled" his lunch and dinner on October 7 (*id.* at 8). Plaintiff alleges Nunn did this in retaliation for Plaintiff's insulting him during the strip search by calling him a "fag" (*id.* at 7–8). Plaintiff alleges a major tenet of his Jewish faith is that all food be kosher or it is considered unclean and not to be consumed (*id.*). Plaintiff alleges Officer Nunn's "defiling" his kosher meals prevented him from consuming clean food as mandated by his Jewish faith (*id.*). Plaintiff alleges he was forced to choose between going hungry and consuming the unsanitary food (*id.*).

Plaintiff alleges on October 7, 2017, Officer Nunn and Defendant Officer Ibanez approached his cell with the food cart to deliver the dinner meal (ECF No. 11 at 8). Plaintiff alleges he saw two kosher meal bags on the cart, and one of the bags was "obviously defiled," because the bottom half of the bag was dark and wet from oil leaking from an opened pouch of fish (*id.*). Plaintiff alleges the officers were standing on both sides of the food flap of his cell door, and Officer Ibanez opened the food flap while Nunn placed the "defiled" bag on the food flap (*id.* at 9). Plaintiff alleges he reached out of the cell through the food flap with both hands and began slowly tearing open the bag to reveal its contents to the video cameras in the

---

needs through prepackaged meals and/or prepackaged food items," referred to as the CFO. *See* Fla. Admin. Code rr. 33-204.002(3), 33-204.002(5), 33-204.003(6), 33-503.001(13).

dormitory (*id.*).  Plaintiff alleges Officers Nunn and Ibanez attempted to push the meal bag into his cell and close the food flap while directing him to take the bag (*id.*). Plaintiff alleges he prevented the officers from pushing the bag into his cell by blocking the opening of the food flap with his body and using his left hand to prevent the officers from closing the food flap (ECF No. 11 at 9; *see also* ECF No. 6 at 10). Plaintiff alleges when the officers saw that they could not push the food bag into Plaintiff's cell, Officer Nunn snatched the bag away, and the officers told Plaintiff he had to take the bag (ECF No. 1 at 9).  Plaintiff alleges as Nunn was snatching the bag, he was still holding part of it with his right hand (ECF No. 1 at 9; ECF No. 11 at 9).  Plaintiff alleges the paper bag ripped open, and fish oil, water, and other "food stuff" poured out (ECF No. 11 at 9).  Plaintiff alleges he told the officers the meal was "messed up" and accused Nunn of "messing" with his food (*id.*).  Plaintiff alleges Officer Nunn tossed the bag onto the food cart and ordered Plaintiff to pull his right arm out of the open food flap and back into his cell (ECF No. 1 at 10). Plaintiff alleges Nunn then grabbed the pinky and ring fingers of Plaintiff's right hand and "violently" twisted them (ECF No. 11 at 9).  Plaintiff alleges he pulled his fingers from Nunn's grasp and back into his cell and cried in pain (*id.*).  Plaintiff alleges his right elbow was still sticking out of the cell through the food flap (*id.* at 10).  He alleges Officers Nunn and Ibanez used their hands to push the food flap

closed for approximately 5 seconds, smashing his arm between the flap and the cell door (*id.*).  Plaintiff alleges the officers backed away from the food flap and yelled for him to pull his arm into his cell (ECF No. 1 at 10).  Plaintiff alleges he cursed at the officers, stuck his left arm out of the cell through the food flap, and pulled his right arm into the cell (ECF No. 1 at 10; ECF No. 6 at 11).  Plaintiff alleges Officers Nunn and Ibanez engaged in this use of force in retaliation for Plaintiff's insulting Officer Nunn by calling him a "fag" (ECF No. 11 at 10).

Plaintiff alleges Officers Nunn and Ibanez left the wing, and Defendant "Unknown Sergeant" entered approximately ten minutes later (ECF No. 11 at 10).  Plaintiff alleges he still had his left arm out of the food flap, and he told the Sergeant about his food and the use of force (*id.* at 10–11).  Plaintiff alleges the Sergeant failed to give him a replacement meal and failed to follow the FDOC's post-use-of-force procedures (*id.* at 11).

Plaintiff alleges approximately one hour after the "assault," Defendant "Unknown Captain" entered the wing and stated he would not talk to Plaintiff while his arm was outside the cell in the food flap (ECF No. 11 at 11).  Plaintiff alleges he pulled his left arm in, and the Captain locked the food flap (*id.*).  Plaintiff alleges he told the Captain what Nunn and Ibanez had done, but the Captain responded with only exaggerated facial expressions (*id.*).  Plaintiff alleges the Captain refused to

give him a replacement meal and failed to follow the FDOC's post-use-of-force procedures (*id.*). Plaintiff alleges the Captain walked away and joked to other officers that he had tricked Plaintiff into pulling his arm into the cell (*id.*).

Plaintiff alleges two days later, on October 9, 2017, Defendant Lieutenant Johnson notified him he was being moved to a cell with a "box flap" and would be issued a disciplinary report ("DR") for holding the food flap open on October 7, 2017 (ECF No. 11 at 12). Plaintiff alleges he told Johnson what happened, and Johnson replied that if he had been in the officers' position, he would have broken Plaintiff's arm (*id.*). Plaintiff alleges Lieutenant Johnson did not investigate the "abuse" by Officers Nunn and Ibanez (*id.* at 12–13).

Plaintiff next alleges that on October 9, 2017, Defendant Chaplain Ult came to his cell and delivered written notification that he was suspending Plaintiff's kosher meals unless Plaintiff provided a reason to prevent the suspension (ECF No. 1 at 12; ECF No. 11 at 13). Plaintiff alleges Chaplain Ult told him the reason for the suspension was the DR for holding the food flap open on October 7 (ECF No. 11 at 13). Plaintiff alleges he attempted to explain his actions, but Chaplain Ult suspended his meals for 120 days (*id.*). Plaintiff alleges the suspension substantially burdened the exercise of his Jewish faith (*id.*). According to a document submitted by Plaintiff with his initial Complaint, Plaintiff was temporarily removed from the RDP on

October 10, 2017, for a period of 120 days, with the suspension ending on February 7, 2018 (*see* ECF No. 1 at 22).

Plaintiff alleges he was moved to a new dormitory on October 11, 2017, and "had no problems" while there (ECF No. 11 at 14).

Plaintiff alleges as a result of the use of force by Officers Nunn and Ibanez, his two fingers became swollen and bruised, and he had red "deep depressions" on his arm which developed into bruises (ECF No. 11 at 9). Plaintiff alleges he suffered pain for several days (*id.*). Plaintiff also alleges he suffered severe emotional and mental anguish as a result of Defendants' conduct (*id.* at 13–14).

IV.    DISCUSSION

A.    "Unnecessary" Search

Plaintiff contends Officer Nunn violated the Eighth Amendment by conducting an unnecessary strip search on October 2, 2017. The Fourth Amendment protects against unreasonable searches and seizures by the government. "Prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison, but they do not enjoy the same Fourth Amendment rights as free persons" and, among other types of searches, "[t]hey must submit to visual body-cavity searches without individualized suspicion." *Padgett v. Donald*, 401 F.3d 1273, 1278 (11th Cir. 2005) (internal quotations and citations omitted); *see also*

*Bell v. Wolfish*, 441 U.S. 520, 545, 558, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Harris v. Thigpen*, 941 F.2d 1495, 1513 (11th Cir. 1991).  A visual body-cavity search is a strip search which includes the visual examination of the anal and genital areas.  *See* Fla. Admin. Code 33–602.204(2)(e)3.[3]  Visual body-cavity searches are acceptable, and while they are not required to be conducted delicately and in the least-intrusive manner, they must be conducted in a reasonable, non-abusive manner.  *See, e.g., Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005) (finding search unreasonable where plaintiffs were strip searched in a broom closet, in front of one another, and anally penetrated by a baton or club).

The court previously advised Plaintiff of the legal standard for stating a plausible constitutional claim based upon Officer Nunn's allegedly unreasonable strip search, and the court provided Plaintiff an opportunity to amend his complaint to state a plausible claim for relief (*see* ECF No. 10 at 5–7).  Despite this advisory and opportunity to amend, Plaintiff has still failed to allege facts that give rise to a claim that Officer Nunn's visual body-cavity search was unreasonable or abusive. Nothing in Plaintiff's version of the facts gives rise to the type of egregious search that would state a claim for a constitutional violation.  *See Fillmore v. Page*, 358

---

[3] Rule 33-602.204(2)(e)3. states, "When a strip search is to be made the inmate will  remove all clothing, place it in a pile, then move away from it a few paces.  The search will include hair, ears, and mouth (dentures to be removed).  The entire body will then be checked including armpits, hands, pubic region, between the toes, soles of the feet, rectum and inner portions of the legs."

F.3d 496, 505 (7th Cir. 2004) (affirming district court's dismissal of plaintiff's claim that forcing him to spread his buttocks five different times during strip search constituted cruel and unusual punishment); *see also, e.g., Moton v. Walker*, No. 8:09-cv-1986-T-33TBM, 2012 WL 380134, at *2, 5–6 (M.D. Fla. Feb. 6, 2012) (holding that no constitutional violation occurred when defendant officer ordered plaintiff to bend at the waist and spread his buttocks three times, while allegedly wearing "a lewd, sadistic, malicious smile on his face"). Accordingly, Plaintiff's constitutional claim against Officer Nunn based upon the strip search should be dismissed.

B.    Retaliation

Plaintiff claims that Officer Nunn "defiled" his meals in retaliation for Plaintiff's insulting him by calling him a "fag" (*see* ECF No. 11 at 17). Plaintiff also claims that Officers Nunn and Ibanez's use of force on October 7, 2017, was in retaliation for the insult (*id.* at 15, 17).

The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *See Crawford-El v. Britton*, 523 U.S. 574, 588 n.10, 592–93, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted). To prevail on a claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected

the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)); *Cummings v. Harrison*, 695 F. Supp. 2d 1263, 1274–75 (N.D. Fla. 2010).

Here, Plaintiff alleges Officer Nunn "defiled" his meals, and Officers Nunn and Ibanez used excessive force in retaliation for Plaintiff's verbally insulting Officer Nunn by calling him and "fag" and telling him to "get his gay ass from around my cell" (*see* ECF No. 11 at 7, 15, 17). An inmate's insulting and derogatory comment to a correctional officer is not constitutionally protected speech; indeed an inmate's verbal disrespect of an officer is an offense punishable under the FDOC's Rules of Prohibited Conduct. *See* Fla. Admin. Code r. 33-601.314, Section 1— Assault, Battery, Threats, and Disrespect, 1-4 (disrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures, and the like is punishable by up to 30 days in disciplinary confinement and forfeiture of up to 60 days of gain time); *see also Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (a prisoner's face-to-face verbal confrontation about the conditions of his confinement was not protected speech); *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that prisoner's characterization of hearing officer as a "foul and corrupted bitch" violated prison regulation prohibiting insolent behavior and was not

protected by the First Amendment); *see also, e.g., Brown v. Hannah*, 850 F. Supp. 2d 471 (M.D. Penn. 2012) (inmate did not have a constitutionally protected right in the prison setting to use inappropriate, disrespectful and derogatory language to a prison official, and therefore, filing misconduct report against inmate was not retaliation in violation of his First Amendment speech rights); *Turner v. Felzien*, No. 11-CV-03033-PAB-MJW, 2013 WL 1093001, at *2 (D. Colo. Mar. 15, 2013) (holding that "insubordinate and derogatory comments made to various prison officials" was not protected by the First Amendment); *Nunez v. Ramirez*, No. 09CV413 WQH (BLM), 2010 WL 1222058, at *5–6 (S.D. Cal. Mar. 24, 2010) (an inmate's direct, face-to-face verbal confrontation with an officer presents a danger of a disturbance and a disruption to institutional order and discipline; therefore, it is not protected speech and cannot support a First Amendment retaliation claim); *Thomas v. MCSO*, No. CV 09-0708-PHX-DGC (JRI), 2009 WL 1311992, at *3 (D. Ariz. May 12, 2009) (holding that calling an officer a derogatory name is not constitutionally protected conduct).

Plaintiff's comment to Officer Nunn was not protected by the First Amendment. Therefore, he cannot state a plausible retaliation claim against Officers Nunn and Ibanez.

C.    <u>Excessive Force</u>

Plaintiff contends Officers Nunn and Ibanez engaged in excessive force when Nunn twisted Plaintiff's two fingers, and Nunn and Ibanez smashed Plaintiff's left arm in the food flap for 5 seconds.

The "core judicial inquiry" in considering an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 319–321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id.* at 7. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* (quoting *Whitley*, 475 U.S. at 321). The extent of injury may also provide some indication of the amount of force applied. *See Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010).

As the Supreme Court stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth

Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (some internal quotation marks omitted).  An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.  *Id.* (internal quotation marks omitted).

"In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including these five: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." *Hudson*, 503 U.S. at 7–8; *see also Whitley*, 475 U.S. at 321.  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.  In cases in which a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or

other acts, if any, constituted the use of excessive force. ” *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002).

Here, Plaintiff alleges Officer Nunn forcefully twisted his pinky and ring fingers, but Plaintiff admits that Nunn did so only after he ordered Plaintiff to pull his right arm out of the open food flap and back into his cell, and Plaintiff refused to comply with the order. Similarly, Plaintiff alleges Officers Nunn and Ibanez smashed his left arm in the cell flap for 5 seconds. But again, Plaintiff admits the officers did so in response to Plaintiff's placing his left arm outside the food flap and refusing to remove it. Furthermore, the de minimis nature of the officers' use of force is apparent from the fact that even after the use of force, Plaintiff was undeterred in his refusal to remove his left arm from the food flap. Plaintiff did not remove it until "Unknown Captain" "tricked" him into doing so. The de minimis nature of the use of force is also apparent from the minimal extent of Plaintiff's injuries, i.e., temporary pain, swelling, and bruising of two fingers and his right forearm.

The court previously advised Plaintiff of the excessive force standard and that his factual allegations failed to state a plausible excessive force claim against Officers Nunn and Ibanez (*see* ECF No. 13 at 11–14). Despite this advisory, and the court's providing Plaintiff the opportunity to amend his complaint to include factual

allegations that plausibly suggest wantonness on the part of Officer Nunn or Officer Ibanez, the allegations of the Second Amended Complaint still fail to do so. Therefore, Plaintiff's excessive force claims against Officers Nunn and Ibanez should be dismissed.  And because the uses of force were not excessive, they cannot serve as an underlying constitutional violation to establish liability on the part of the Lieutenant Johnson, "Unknown Sergeant," or "Unknown Captain.  *See Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").  Therefore, all of Plaintiff's Eighth Amendment claims should be dismissed.

D.    RLUIPA

Plaintiff asserts a RLUIPA claim against Officer Nunn in his official capacity for Nunn's "defiling" five of Plaintiff's kosher meals (*see* ECF No. 11 at 15, 17). Plaintiff asserts a RLUIPA claim against Chaplain Ult in his official capacity for his temporarily suspending Plaintiff from the RDP from October 10, 2017, to February 7, 2018 (*id.*).  Plaintiff seeks a declaratory judgment and monetary damages (*id.* at 16, 17).

The Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). The Supreme Court has held that RLUIPA does not authorize suits for damages against a State. *See Sossamon v. Texas*, 563 U.S. 277, 288, 131 S. Ct 1651, 179 L. Ed. 2d 700 (2011). Therefore, Plaintiff's claims for monetary damages against Officer Nunn and Chaplain Ult in their official capacities must be dismissed.

Additionally, RLUIPA does not authorize claims for monetary damages against prison officials in their individual capacities. *See Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated in part on other grounds by Sossamon*, *supra*. Therefore, to the extent Plaintiff's asserts individual capacity claims for monetary damages under RLUIPA, the claims must be dismissed.

The only other relief Plaintiff seeks is a declaratory judgment stating that Officer Nunn and Chaplain Ult violated his rights under RLUIPA (*see* ECF No. 11 at 15, 16). However, Plaintiff does not have standing to seek declaratory relief. The three prerequisites for standing are: (1) the plaintiff suffered an injury in fact—an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal

connection between that injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Corbett v. Transp. Sec. Admin.*, — F.3d —, 2019 WL 3244082, at *5 (11th Cir. July 19, 2019) (citing *Lujan v. Defenders Of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *see also 31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003).

"By insisting that a plaintiff show a substantial likelihood of future injury, in the absence of declaratory or injunctive relief, courts further one of the purposes of the constitutional standing requirement—reserving limited judicial resources for individuals who face immediate, tangible harm absent the grant of declaratory or injunctive relief." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000 (citation omitted). "Declaratory relief is by its nature prospective." *McGee v. Solicitor Gen. of Richmond Cnty., Ga.*, 727 F.3d 1322, 1325 (11th Cir. 2013). "When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." *31 Foster Children*, 329 F.3d at 1265; *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir.1999) ("Injury in the past, however,

does not support a finding of an Article III case or controversy when the only relief sought is declaratory judgment."). And even if the plaintiff shows immediacy, the injury must still be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural. *See Fla. State Conference of N.A.A.C.P.*, 522 F.3d at 1161; *see also Bowen*, 233 F.3d at 1340 (observing that a "perhaps or maybe chance" of an injury occurring is not enough for standing).

Here, Plaintiff seeks a declaratory judgment stating that Officer Nunn's "defiling" five of his kosher meals in October of 2017, and Chaplain Ult's suspending his participation in the RDP from October 10, 2017 to February 7, 2018, violated RLUIPA (ECF No. 11 at 15, 16). Plaintiff filed this lawsuit on January 9, 2019 (*see* ECF No. 1 at 13), well after the alleged RLUIPA violations occurred. Plaintiff has not shown how the past "defiling" of his kosher meals or the past temporary suspension from the RDP based upon Plaintiff's conduct on October 7, 2017, creates a present right, let alone how his requested declarations would redress it. Even if Plaintiff suffered a past injury, he does not allege any facts suggesting that an injury is likely to occur immediately or that any threatened future injury is more than hypothetical or conjectural. Indeed, the fact that Plaintiff was transferred from Santa Rosa C.I. to a different FDOC facility in April of 2019 (*see* ECF No. 9)

renders the possibility of future injury even less likely.  Because Plaintiff cannot show either a continuing uncertainty with respect to a present right, or an immediate threat of future harm, he does not have standing to seek declaratory relief.

In sum, Plaintiff cannot recover monetary damages for the alleged RLUIPA violations, and he does not have standing to obtain declaratory relief.  Therefore, Plaintiff's RLUIPA claims should be dismissed.

E.    First Amendment Free Exercise of Religion

Plaintiff asserts Free Exercise claims against Officer Nunn, the supervisory Defendants, and Chaplain Ult.  "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974); *Lawson v. Singletary*, 85 F.3d 502, 509 (11th Cir. 1996).  However, a prisoner's right to exercise his religion is not absolute; it is only required that he be accorded a reasonable opportunity to pursue his religion.  *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) (per curiam).  Thus, while inmates maintain a constitutional right to freely exercise their sincerely held religious beliefs, this right is subject to prison authorities' interests in maintaining safety and order.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987);

*Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). The Supreme Court held in *Turner* that when a prison regulation or policy impinges upon an inmate's constitutional rights, the policy is valid if it is reasonably related to legitimate penological interests. 482 U.S. at 89–91; *see also Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996). Prison administrators should be given great deference in adopting and executing policies and practices. Absent substantial evidence in the record indicating that officials exaggerated their response to considerations of order, discipline, and security, courts ordinarily should defer to their judgment. *See Bell*, 441 U.S. at 547; *see also McCorkle v. Johnson*, 881 F.2d 993 (11th Cir. 1989).

Thus, to find a Free Exercise violation in the prison context, a plaintiff must demonstrate that prison officials employed a policy or engaged in conduct not reasonably related to any legitimate penological interest or security measure, which substantially burdens a practice of his religion or prevents him from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs. *Cf. Thornburgh v. Abbott*, 490 U.S. 401, 418, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (noting that *O'Lone* found prison regulations valid in part because the prisoners were

permitted to participate in other Muslim religious ceremonies). A "substantial burden" is one that "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981)

The court previously advised Plaintiff of the standard for stating a Free Exercise claim, and provided him an opportunity to amend his complaint to state facts that stated a plausible claim for relief (*see* ECF No. 10 at 7–8). Despite this advisory, Plaintiff's Second Amended Complaint still fails to state a plausible Free Exercise claim based upon Officer Nunn's "defiling" his meals. Plaintiff alleges Nunn "defiled" his lunch and dinner on October 3, 2017, his dinner on October 6, 2017, and his lunch and dinner on October 7, 2017. Even if Nunn "defiled" five meals over a five-day period, this fact does not plausibly suggest Plaintiff suffered a substantial and significant interference with the practice of his religious beliefs. Therefore, Plaintiff's claim against Nunn and Nunn's supervisors should be dismissed.

Plaintiff's free exercise claim based upon Chaplain Ult's suspending him from the RDP for 120 days should also be dismissed, but for a different reason, namely, the suspension was reasonably related to a legitimate penological interest.

According to Plaintiff's allegations and the documents he attached to his initial Complaint, the reason for the temporary suspension was the following:

> According to the institution and Department records you were found to have violated the RDP/CFO procedure by an "inability to manage the diet in a manner consistent with institutional safety and security," you created a security issue by holding your door flap down when an officer was trying to deliver your RDP meal.

(ECF No. 1 at 22–23, 27).

Plaintiff admits he took control of the food flap of his cell door in order to resist the officers' attempt to deliver his RDP meal (albeit an allegedly "defiled" meal), and he admits he refused to obey the officers' orders to take the meal. Chaplain Ult's temporarily suspending Plaintiff from the RDP for 120 days was reasonably related to legitimate penological and security interests. Therefore, Plaintiff has failed to state a plausible First Amendment claim against Chaplain Ult.

III.   CONCLUSION

The factual allegations of the Second Amended Complaint fail to state a plausible claim for relief against any Defendant. Therefore, Plaintiff's claims against all Defendants should be dismissed with prejudice.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Plaintiff's claims against Defendants **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); and

2.     That the clerk of court be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this 27th day of August 2019.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**